[Cite as *State v. Amherst Alliance, L.L.C.*, 2019-Ohio-4640.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | No. 18AP-982 |
| | | (C.P.C. No. 16CV-1043) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Amherst Alliance, LLC, et al., | : | |
| Defendants-Appellees. | : | |
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | No. 18AP-983 |
| | | (C.P.C. No. 16CV-5141) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| United Church Homes, Inc., | : | |
| Defendant-Appellee. | : | |
| State of Ohio, | : | |
| Plaintiff-Appellant, | : | No. 18AP-984 |
| | | (C.P.C. No. 16CV-7057) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Orion Royal Oaks, LLC, et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on November 12, 2019

**On brief:** *Dave Yost,* Attorney General, *William C. Greene,* and *Anthony J. Molnar*, for appellant. **Argued:** *William C. Greene.*

**On brief:** *Rolf Goffman Martin Lang LLP, Christopher G. Kuhn, Jaqueline Anderson,* and *Joseph F. Petros, III,* for appellees. **Argued:** *Christopher G. Kuhn.*

APPEALS from the Franklin County Court of Common Pleas

LUPER SCHUSTER, J.

{¶ 1} Plaintiff-appellant, State of Ohio, appeals from three decisions and entries of the Franklin County Court of Common Pleas granting the motions for summary judgment of defendants-appellees, Amherst Alliance, LLC, Progressive Green Meadows, LLC, Progressive Morning Care, LLC, Progressive Rolling Hills, LLC, Progressive Parma Care Center, LLC, Progressive Park, LLC, Progressive Pines, LLC, United Church Homes, Inc., Orion Royal Oaks, LLC, Orion Willow Park, LLC, Orion Mansfield, LLC, Orion Austinburg, LLC, Orion Blossom, LLC, Orion Toledo, LLC, Orion Lexington, LLC, Essex Healthcare Corporation, and Camelot Arms Care Center, Inc. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2} In 2016, the state filed three separate complaints in the trial court alleging appellees, all operators of skilled nursing facilities ("SNFs") receiving Medicaid reimbursement, had violated R.C. 5164.35 ("the Provider Offenses Statute") by willfully or through the use of deception obtaining Medicaid funds which appellees were not entitled to receive. Specifically, the state alleged in its three complaints that between 2008 and 2010 appellees used deception to obtain Medicaid Provider Agreements for nonexistent independent laboratories and/or willfully billed and accepted Medicaid reimbursement for blood glucose tests conducted on SNF residents for which Medicaid does not provide reimbursement.

{¶ 3} On March 3, 2017, the trial court granted the parties' joint motion to consolidate the cases. Subsequently, on August 11, 2017, appellees filed a joint motion for summary judgment, arguing the state could not meet its burden to show that appellees either willfully or through deception sought to receive or obtain Medicaid reimbursement to which they were not entitled. Through their Civ.R. 56 evidentiary materials, appellees sought to establish that although laboratory procedures, including blood glucose tests, are not included in the Medicaid per diem payment to SNFs, these laboratory services are

reimbursable by Medicaid under independent laboratory agreements, and the appellees qualified as independent laboratories under the relevant Medicaid statutory and administrative code provisions. Further, appellees argued that during the relevant time frame, the Ohio Administrative Code allowed for reimbursement for blood glucose tests, and as such, the state could not seek to retroactively apply a new policy determining SNFs could not also operate as independent laboratories in order to establish a violation of the Provider Offenses Statute.

{¶ 4} The state responded to appellees' motion for summary judgment with a September 29, 2017 memorandum in opposition. In its memorandum in opposition, the state asserted that appellees knew they were not entitled to reimbursement for blood glucose tests so they sought to use deceit to establish themselves, on paper only, as independent laboratories eligible for Medicaid reimbursement. The state argued its Civ.R. 56 evidence demonstrated that appellees misled the Ohio Department of Medicaid to obtain approval of their applications to become independent laboratory providers, allowing appellees to then bill Medicaid simultaneously for their services as SNFs and as independent laboratories, collecting millions of dollars from the Department of Medicaid in the process. Once the Department of Medicaid realized appellees were submitting payment claims as two simultaneously existing providers, the Department of Medicaid then issued a policy on November 22, 2010 declaring that SNFs could not seek separate reimbursement for blood glucose tests and other "routine procedures." (No. 18AP-984, Ex. No. 35, attached as Appx. A to Appellees' Aug. 14, 2017 Notice.) Appellees filed a combined reply brief in support of their motion for summary judgment on November 1, 2017.

{¶ 5} In three separate decisions and entries filed in each of the three cases on November 30, 2018, the trial court granted appellees' combined motion for summary judgment. Specifically, the trial court determined the state did not provide any Civ.R. 56 evidence creating a genuine issue of material fact as to whether appellees could be licensed as independent laboratories at the time the Department of Medicaid granted their licensure and made payments to appellees for the blood glucose tests. The trial court further concluded that because the Civ.R. 56 evidence demonstrated that appellees sought guidance from the Department of Medicaid in applying for and ultimately receiving licensure as independent laboratories, the state failed to establish there remained a genuine

issue of material fact as to appellees' using deception.  The state timely appeals all three decisions.  This court sua sponte consolidated the cases for purposes of appeal.

## II.  Assignment of Error

{¶ 6}  The state assigns the following error for our review:

> The trial court erred in granting summary judgment to defendant-appellees.

## III.  Standard of Review and Applicable Law

{¶ 7}  An appellate court reviews summary judgment under a de novo standard. *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995); *Koos v. Cent. Ohio Cellular, Inc.*, 94 Ohio App.3d 579, 588 (8th Dist.1994).  Summary judgment is appropriate only when the moving party demonstrates (1) no genuine issue of material fact exists, (2) the moving party is entitled to judgment as a matter of law, and (3) reasonable minds could come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence most strongly construed in its favor.  Civ.R. 56(C); *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181, 183 (1997).

{¶ 8}  Pursuant to Civ.R. 56(C), the moving party bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a material fact.  *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996).  However, the moving party cannot discharge its initial burden under this rule with a conclusory assertion that the nonmoving party has no evidence to prove its case; the moving party must specifically point to evidence of the type listed in Civ.R. 56(C) affirmatively demonstrating that the nonmoving party has no evidence to support the nonmoving party's claims.  *Id.*; *Vahila v. Hall*, 77 Ohio St.3d 421, 429 (1997).  Once the moving party discharges its initial burden, summary judgment is appropriate if the nonmoving party does not respond, by affidavit or as otherwise provided in Civ.R. 56, with specific facts showing that a genuine issue exists for trial.  *Dresher* at 293; *Vahila* at 430; Civ.R. 56(E).

## IV.  Analysis

{¶ 9}  In its sole assignment of error, the state argues the trial court erred in granting appellees' motion for summary judgment.  More specifically, the state argues it

provided sufficient evidence in opposition to appellees' motion for summary judgment to create a genuine issue of material fact as to whether appellees violated the Provider Offenses Statute.

{¶ 10}   The state asserted in its complaints that appellees violated various provisions of the Provider Offenses Statute, namely R.C. 5164.35(B)(1)(a), (b), and (c).  In pertinent part, the Provider Offenses Statute states:

> (1) No medicaid provider shall do any of the following:
>
> (a) By deception, obtain or attempt to obtain payments under the medicaid program to which the provider is not entitled pursuant to the provider's provider agreement, or the rules of the federal government or the medicaid director relating to the program;
>
> (b) Willfully receive payments to which the provider is not entitled;
>
> (c) Willfully receive payments in a greater amount than that to which the provider is entitled;
>
> * * *
>
> (2) A medicaid provider engages in "deception" for the purpose of this section when the provider, acting with actual knowledge of the representation or information involved, acting in deliberate ignorance of the truth or falsity of the representation or information involved, or acting in reckless disregard of the truth or falsity of the representation or information involved, deceives another or causes another to be deceived by any false or misleading representation, by withholding information, by preventing another from acquiring information, or by any other conduct, act, or omission that creates, confirms, or perpetuates a false impression in another, including a false impression as to law, value, state of mind, or other objective or subjective fact.  No proof of specific intent to defraud is required to show, for purposes of this section, that a medicaid provider has engaged in deception.

R.C. 5164.35(B)(1) through (2).

{¶ 11}   The state argued in its response to appellees' motion for summary judgment and on appeal that there remains a genuine issue of material fact as to whether appellees

acted willfully and/or by deception. However, as appellees note, under the plain language of the Provider Offenses Statute, the threshold issue to finding a violation of R.C. 5164.35(B)(1)(a), (b), or (c) is a finding that appellees were not entitled to the payments. Stated another way, if the state is unable to demonstrate that appellees were not entitled to the Medicaid payments they received or attempted to receive, the state's claims for violations of the Provider Offenses Statute must fail and summary judgment was appropriate.

{¶ 12} The issue of whether appellees were entitled to the Medicaid payments they received or attempted to receive for the blood glucose tests from the period of 2008 to 2010 depends on the interplay of appellees' status as both SNFs and independent laboratories. Pursuant to the version of the statute in effect during this time period, SNFs enrolled in Medicaid are paid a per diem rate that covers both "direct care costs" and "ancillary and support costs" of the SNF residents. Former R.C. 5111.222(A) (effective June 30, 2006). The Ohio Administrative Code then provides that "[a]ll laboratory and x-ray procedures covered under the Medicaid program are reimbursed directly to the laboratory or x-ray provider." Former Ohio Adm.Code 5101:3-3-19(B) (effective Feb. 2, 2006; currently codified at Ohio Adm.Code 5160-3-19(D)). A separate section of the Ohio Administrative Code covers those costs *not* reimbursable to SNFs and provides that "[t]he costs of ancillary services rendered to [SNF] residents by providers who bill medicaid directly," including but not limited to "physicians, legend drugs, radiology, laboratory, oxygen, and resident-specific medical equipment." Former Ohio Adm.Code 5101:3-3-42.4(E) (effective Feb. 9, 2006; currently codified at Ohio Adm.Code 5160-3-42.4).

{¶ 13} Appellees agree with the state that, pursuant to their status as SNFs, the statutory and regulatory framework outlined above prohibited them from collecting Medicaid reimbursement, separate from their per diem reimbursement, for blood glucose tests performed on their residents. However, an "independent laboratory" is a distinct provider contemplated in the Medicaid statutes and regulations. Here, appellees sought and were granted approval to operate as independent laboratories by the Department of Medicaid. Under former Ohio Adm.Code 5101:3-11-01(A):

> "Independent laboratory" means a facility for the biological, microbiological, immunological, immunohematological,

> serological, chemical, hematological, cytological, pathological or other examination of materials of the human body for the purpose of providing information for the diagnosis, prevention, or treatment of any disease or impairment, or for the assessment of an individual's health. *An "independent laboratory" is a facility that is independent of the attending or consulting physician's office, a clinic, an ambulatory surgery center, or a hospital.* A laboratory under the ownership and direction of a physician or physician group, such as a pathologist(s), is considered an independent laboratory if the physician holds himself or herself and the facilities of his or her office out to other physicians as being available for the performance of laboratory procedures. Facilities only collecting or preparing specimens or only serving as a mailing service and not performing testing are not considered laboratories.

(Emphasis added.) Former Ohio Adm.Code 5101:3-11-01(A) (effective May 25, 2006; currently codified at Ohio Adm.Code 5160-11-01).

{¶ 14} As the emphasized language above notes, the regulatory definition of "independent laboratory" in effect during the relevant time frame specifically listed four entities from which an "independent laboratory" must be independent: (1) the offices of the attending or consulting physicians, (2) clinics, (3) ambulatory surgery centers, and (4) hospitals. Former Ohio Adm.Code 5101:3-11-01(A). Notably absent from this list of four entities are SNFs. Though the state argues that SNFs should be impliedly included in the list of four entities, arguing there must be some de minimis requirement that an independent laboratory has some physical independence from the SNF facility, the state points to no authority, statutory or otherwise, to support this argument. Additionally, the state points to no legal authority to support its position that, during the time in question, an SNF could not also be licensed as an independent laboratory. Notably, the Department of Medicaid knew of and approved the applications of the SNFs to become additionally licensed as independent laboratories, undercutting the state's argument that the statutory and regulatory framework impliedly prohibited such dual licensure.

{¶ 15} The state also argues that appellees should have known they were unable to seek Medicaid reimbursement for the blood glucose tests because under former Ohio Adm.Code 5101:3-11-03(K)(1)(b), "[r]outine laboratory and screening procedures" are

"non-covered laboratory services."  Again, however, while the state asserts blood glucose tests inherently must be considered routine laboratory procedures, it points to no legal authority to support such an argument.  We are also mindful that once appellees received notification from the state, in November 2010, that a new policy determination prohibited SNFs from seeking Medicaid reimbursement for blood glucose tests because those tests qualified as routine laboratory tests, appellees stopped seeking reimbursement for the blood glucose tests.  While the state seeks to have the November 2010 policy decision apply retroactively this is not supported by law.

{¶ 16}  The Civ.R. 56 materials submitted to the trial court demonstrate that there was nothing prohibiting appellees' conduct of collecting reimbursement for the blood glucose tests prior to the November 2010 policy decision.  Thus, we agree with the trial court that state did not meet its burden under Civ.R. 56 to demonstrate there remained a genuine issue of material fact as to whether appellees were not entitled to the Medicaid reimbursement they sought, as licensed independent laboratories, for the blood glucose tests.  Accordingly, we conclude the trial court did not err in granting appellees' motion for summary judgment.  We overrule the state's sole assignment of error.

## V.  Disposition

{¶ 17}  Based on the foregoing reasons, the trial court did not err in granting appellees' motion for summary judgment.  Having overruled the state's sole assignment of error, we affirm the judgments of the Franklin County Court of Common Pleas.

*Judgments affirmed.*

KLATT, P.J., and NELSON, J., concur.

NELSON, J., concurring.

{¶ 18}  I concur fully in the panel decision, and write separately only to observe that students of the ways of governmental bureaucracies may find that the full record in this case rewards their examination.  The state's posture here is characterized by its argument that:  "While Appellees state that Appellant [the State of Ohio] can cite no legal authority supporting the proposition that one entity cannot simultaneously be two provider types, ***they*** have cited no authority establishing that one entity can.  Whose interpretation of the

rules should be afforded deference?"  Appellant's May 17, 2019 Reply Brief at 5 (emphasis in original).  The notion that the state can regulate telepathically through unexpressed administrative intention (whether or not in direct conflict with staff guidance actually expressed, as appellees have submitted here) has little support in law under our system of checks and balances.  I grant that it may not be too far removed, however, from the apparently less exotic notion that regulatory power appropriately expands to the extent that the regulators can craft especially opaque rules and then claim interpretive "deference."

————————————